IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANNY CONWAY,
      Plaintiff,

v.                                  CIVIL ACTION NO. RDB-09-514

NANCY ROUSE, et al.,
      Defendants.

\*\*\*\*\*\*

## MEMORANDUM OPINION

On March 3, 2009, the Court received Plaintiff Danny Conway's civil rights complaint seeking compensatory damages and injunctive relief filed pursuant to 42 U.S.C. § 1983. Conway alleges he was subjected to excessive force, had false disciplinary charges filed against him, and was denied due process during his disciplinary proceedings. Paper No. 1.

Defendants Warden Nancy Rouse, Commissioner J. Michael Stouffer, Officer James Diehl, Officer Eric Fisher, Officer Rodney Miller, Sergeant Paul Jackson, and CO II Dean Forshay, have filed a Motion to Dismiss, or in the Alternative for Summary Judgment. Paper No. 14. Plaintiff has filed an opposition. Paper No. 19. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2009). For the reasons stated below, the dispositive motion filed by Defendants, treated as a motion for summary judgment, will be granted.

**Background**

Conway alleges that on January 27, 2008, Officers Jackson and Olgin took him from general population to a holding cell. He states that Olgin had a problem securing the handcuffs. Plaintiff took his hand away from the slot to inform Olgin that the handcuffs were pinching him. Paper No. 19, Affidavit. Olgin then secured the handcuffs and he was escorted to the holding cell. Once there Officer Englehart asked Plaintiff about the belt he was wearing. Plaintiff advised Englehart he had been cleaning his cell and happened to put the belt on. Englehart

advised Plaintiff that the belt could be used for a weapon. Plaintiff was concerned that the belt would be confiscated and asked to speak to the lieutenant. After speaking to the lieutenant spoke to Plaintiff gave the Lieutenant the belt.

Later, Officers Diehl, Miller, Jackson and Fischer came to Plaintiff's cell and advised him that he would be strip searched. He was directed to face the wall with his hands and feet spread, and advised by Diehl that "any act of resistance would be an act of aggression." *Id*. Plaintiff was instructed to take of his shirt and hand it over his right shoulder. Plaintiff complied. He was ordered to take off his right shoe and hand it over his right shoulder. Plaintiff "took off both shoes because it was cold and [he] wanted to get the search over with." *Id*. Diehl pushed Plaintiff's head against the wall stating he had told Plaintiff to take off his right shoe. Plaintiff responded that he was not doing anything wrong, and it was cold in the cell. Diehl then pulled Plaintiff's hand from the wall and pulled his arm behind his back. Plaintiff turned his head to the left and Jackson hit Plaintiff with a fist, knocking him to the floor and causing him to hit his head on the wall. Officers then "kicked [Plaintiff] in the head, stomped on his back, [and Plaintiff] hit the floor again." Plaintiff was maced or pepper sprayed, then escorted to medical. *Id*.

Plaintiff states he was later served with two sets of "charging notices" and that it was falsely noted he refused to sign for same. He states that he was not given the opportunity to list his witnesses. Plaintiff states that at the subsequent disciplinary adjustment hearing he was denied witnesses and subsequently found guilty of rule violations and sentenced to segregation confinement and loss of visitation privileges. Paper Nos. 1 and 19.

The uncontroverted records reflect that on January 27, 2008, Plaintiff was escorted to the back-keys holding area to be interviewed. At that time it was discovered that Plaintiff was

wearing a leather belt around a pair of sweat pants. Sgt. Englehart, the officer in charge of the back-keys area, felt that the belt could be used as a weapon or to commit suicide. Sgt. Beauparlant asked Plaintiff to give him the belt. Initially Plaintiff was confrontational, argumentative and refused to comply. After Plaintiff was advised that the belt would not be confiscated and would be returned to him, he then turned over the belt. Beauparlant had Plaintiff placed in the Back-keys holding area for a cooling off period. Paper No. 14, Ex. A, p. 10, 11.

While Plaintiff remained in the back-keys holding area, Officers Diehl, Miller, and Fischer conducted a routine strip search. Plaintiff was non-compliant with orders during the search, and became combative and aggressive, and swung around attempting to strike Diehl with his left elbow. He continued to swing at the officer with a closed fist. Fischer applied a one second burst of pepper spray to Plaintiff's face in an effort to subdue him. Miller and Fischer then took Plaintiff's arms and forced him to the floor to be handcuffed, while Diehl took Plaintiff's wrists to assist in the handcuffing. Plaintiff was escorted to the medical unit to be evaluated and treated for the effects of pepper spray. Paper No. 14, Ex. A, p. 6, 12-17, 22, Ex. B, Declaration of Diehl, Ex C. Declaration of Miller, Ex. D., Declaration of Fischer, .

Plaintiff was evaluated by medical staff. He complained of "eyes burning, tearing—contact with skin and mucous membranes." *Id.* p. 19. Skin irritation was observed on his face. He also complained of back pain. Mild abrasions were noted in the middle back to the left side. Plaintiff was instructed to flush his face with water. There was no bleeding or bruising observed and no treatment was provided.[1] *Id*. p. 21. Photographs taken after the incident denote redness on Plaintiff's face, ear, and middle left back. *Id*., p. 18.

---

[1] Plaintiff has attached to his opposition, a prescription for ibuprofen dated February 22, 2009. Paper No. 19, Ex. 1. The Court does not find this exhibit relevant, given that it was issued over one year after the incident and Plaintiff has not provided any evidence to link this prescription to the injuries allegedly sustained on January 27, 2008.

As a result of this incident, Plaintiff was given a notice of inmate rule infraction, which he refused to sign. *Id*., p. 34. A formal hearing was held on January 31, 2008. At that time, Plaintiff complained that he was not permitted to call an unnamed witness. The hearing officer found that Plaintiff had not placed the witness named on the notice of rule infraction as required and, therefore, the notice to call a witness was not timely filed. *Id*., 35. After receipt of all evidence, the hearing officer found Plaintiff's version of events, that he was assaulted by correctional officers because he took both shoes off when only instructed to remove one shoe, unpersuasive. The hearing officer found that Plaintiff has attempted to hit the officer with his elbow during a body search. Plaintiff was found guilty of the charged rule infractions and received segregations time and loss of visits. *Id*, p. 36.

## Standard of Review

Fed. R. Civ. P. 56(c) provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all

inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

**Eighth Amendment**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, 559 U.S. \_\_, Slip Op. No. 08-10914 (Feb. 22, 2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. As the Court noted in *Wilkens*, the issue is the nature of the force, not the extent of injury.

The uncontroverted records reveal that while Plaintiff was being subjected to a routine strip search he became combative with correctional officers. By his own admission, Plaintiff indicates that he did not follow the orders of correctional officers regarding the procedure for the strip search because the cell was cold. While Plaintiff denies that he initiated the assault on correctional officers,

5

his version of events, that the officers, without provocation, hit, stomped, and threw him to the ground, finds no support in the record. Plaintiff's version is not only contradicted by the matters of record prepared as a result of the incident, the hearing officer's findings, and the declarations of the officers involved, but by the medical records and photographs provided to the Court. The objective evidence, i.e. medical records and photographs, shows no evidence of Plaintiff having been beaten and stomped by five correctional officers. Rather, in accordance with Defendants' version of events they show the effects of pepper spray and being taken to the ground in order to be handcuffed. Moreover, Plaintiff maintains that had he been permitted to provide a witness at his adjustment hearing the outcome of that hearing would have been different. Significantly, Plaintiff has failed to provide to the Court an affidavit from this witness, or even the witness's name and a summary as to what this witness would have testified to. Simply stated, Plaintiff has failed to demonstrate that Defendants acted sadistically and maliciously with the intent to cause him harm. There is no dispute that Plaintiff was non-compliant with the strip search procedure, nor is there any dispute that Defendants perceived Plaintiff to be combative and assaultive toward him. Defendants were entitled to subdue Plaintiff and regain control over him. Each defendant is entitled to summary judgment.

**Due Process**

In prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits, he is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Wolff*, 418 U. S. at 564-571. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). The record reflects that Plaintiff did not lose any good conduct credits as a result of the disciplinary proceeding. He therefore received all process that he was due.

6

## **Conclusion**

For the aforementioned reasons, the case shall be dismissed. Defendants' Motion for Summary Judgment shall be granted. A separate order follows.

<u>June 16, 2010</u>                  _____/s/_____
Date                                         RICHARD D. BENNETT
                                                   UNITED STATES DISTRICT JUDGE